**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| CELESTE CHAMBLISS, individually and on behalf of all similarly situated persons, | **CLASS ACTION COMPLAINT** |
| Plaintiff, | |
| v. | Case No: |
| UNITED SERVICES AUTOMOBILE ASSOCIATION ("USAA"), and GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY, | Jury Trial Demanded |
| Defendants. | |

Plaintiff, Celeste Chambliss, individually and on behalf of a class of similarly situated persons, entities, and businesses ("Plaintiff"), files this Class Action Complaint against the Defendants, and alleges as follows:

## I.   INTRODUCTION

1.     This case arises from Defendants' failure to pay the "actual cash value" ("ACV") of total loss vehicles as required by their automobile insurance policies.

2.     Defendants' policy defines ACV as "the amount that it would cost at the time of loss to buy a comparable vehicle." (Ex. A, p. 14 of 24).

3.     The policy further defines a "comparable vehicle" as "one of the same make, model, model year, body type, and options with substantially similar mileage and condition." (Ex. A, p. 14 of 24).

4.     This definition requires Defendants to determine the real-world retail price necessary to purchase a comparable vehicle in the marketplace.

5.      Defendants do not do that.

6.     Instead, Defendants utilize a software platform referred to as a CCC One Market Valuation Report ("CCC One Report") that reduces the listed price of comparable vehicles before calculating ACV.[1]

7.     These deductions artificially lower the price of comparable vehicles and result in systematic underpayment of vehicle total loss claims well below the promised "amount that it would cost at the time of loss to buy a comparable vehicle."

8.     Plaintiff brings this action on behalf of herself and the classes to enforce the policy as written and to stop Defendants from continuing the use of a valuation methodology that violates the Defendants' contractual obligations.

## II.    PARTIES

9.     Plaintiff, Celeste Chambliss, is a citizen and resident of Pike Road, Montgomery County, Alabama.

---

[1] The CCC One Report used to pay the total loss claim of Plaintiff, Celeste Chambliss, is attached here as Exhibit B.

10.     Defendant, United Services Automobile Association ("USAA"), is organized under the laws of the State of Texas with its principal business address at 9800 Fredericksburg Road, San Antonio, Texas 78288. USAA does business in Alabama through its subsidiaries, Defendant, Garrison Property and Casualty Insurance Company ("Garrison"), and two other automobile underwriting subsidiaries, USAA Casualty Insurance Company ("CIC") and USAA General Indemnity Company ("GIC").

11.     Defendant, Garrison, is a foreign corporation doing business in the State of Alabama and licensed with the Alabama Department of Insurance. Garrison is domiciled in Texas, with its principal address the same as USAA, at 9800 Fredericksburg Road, San Antonio, Texas 78288

12.     The principal business address of CIC and GIC are also the same.

13.     USAA operates as the central controlling entity of the integrated insurance enterprise with Garrison, CIC, and GIC.

14.     Plaintiff asserts a claim for breach of contract against Defendant USAA and Defendant Garrison.

15.     Plaintiff also asserts claims for declaratory and injunctive relief against Defendant USAA and Defendant Garrison.

### III.    JURISDICTION AND VENUE

16.    This Court has personal jurisdiction over both USAA and Garrison as each Defendant conducts insurance business in this District.

17.    The Court has jurisdiction over the subject matter of this class action pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act ("CAFA"), because at least one member of the putative class, including the Plaintiff, is a citizen of Alabama and the Defendants are citizens of Texas, thus meeting CAFA's minimal diversity requirement.

18.    Additionally, the proposed class consists of 100 or more members, and the amount in controversy, when aggregated among a proposed class of thousands, exceeds $5,000,000.00, exclusive of costs, interest, and fees that might be awarded.

19.    Venue in this case is proper in this District pursuant to 28 U.S.C. § 1391(b), (c), and (d) because the Defendants are deemed to reside in any judicial district in which it is subject to personal jurisdiction. Both Defendants have sufficient business and contacts for jurisdiction in this District.

### IV.    FACTUAL ALLEGATIONS

#### A. Uniform Policy Requirements

20.    Plaintiff's policy provides that, in the event of a total loss, Defendants will pay the vehicle's ACV.

21. The policy defines ACV as "the amount that it would cost at the time of loss to buy a comparable vehicle." (Ex. A, p. 14 of 24).

22. A "comparable vehicle" is defined as "one of the same make, model, model year, body type, and options with substantially similar mileage and physical condition." (Ex. A, p. 14 of 24).

23. This definition requires Defendants to determine the cost to purchase comparable vehicles in the actual retail market.

24. The policy does not permit Defendants to reduce the price of comparable vehicles to reduce total loss claim payments.

25. Further, these policy provisions are uniform for all insureds of the Defendants in the State of Alabama and applicable to all class members.

**B. Defendant's Uniform Valuation Practices**

26. Upon information and belief, USAA has selected CCC Information Services, Inc.[2] ("CCC") as its vendor to generate vehicle valuation reports. The CCC platform is CCC One, a cloud-based software suite used by USAA in processing automotive total loss claims.

27. USAA uniformly uses these CCC One Reports to generate total loss valuations for all of its underwriting subsidiaries, Garrison, CIC, and CIG.

---

[2] Also known as CCC Intelligent Solutions Inc.

28. CCC One Reports identify comparable vehicles listed for sale in the marketplace. (Ex. B, pp. 10–12).

29. The listed prices of these vehicles represent the real-world amounts required to purchase comparable vehicles.

30. Instead of using those list prices, USAA applies a so-called "condition adjustment" deduction to reduce the value of each comparable vehicle.

31. Plaintiff's CCC One Report shows that each comparable vehicle was reduced by the same "condition adjustment" amount—$2,302.00. (Ex. B, p. 12).

32. These uniform deductions are applied regardless of differences in mileage, equipment, or condition of a comparable vehicle.

33. The reduced values—not the actual listing prices—are then used to determine ACV.

34. As a result, Defendants do not pay the amount required to purchase a comparable vehicle.

35. In short, by reducing the retail cost of the comparable vehicles used to arrive at a pre-accident value of total loss vehicles, USAA determines the pre-accident value not by actual verifiable information and industry standards, but by an artificial, downwardly skewed, and deflated market of its own invention.

36. Plaintiff's total loss payment was based on this reduced value rather than the actual market price of comparable vehicles.

37. Plaintiff was paid $2,302.00 less than the promised "amount that it would cost at the time of loss to buy a comparable vehicle."

38. This vehicle valuation methodology which uses condition adjustments to reduce the price of comparable vehicles is applied in the same manner for all claims in the State of Alabama and applicable to all class members.

### C. USAA's Structure, Centralized Control, and CCC One Implementation

39. USAA operates as a reciprocal interinsurance exchange and the central entity of the USAA insurance enterprise.

40. Upon information and belief, USAA establishes uniform claims handling procedures across all affiliated insurers.

41. Upon information and belief, USAA contracted with CCC to use its CCC One Report platform to adjust claims for its auto insurance underwriting subsidiaries, Garrison, CIC and GIC.

42. The CCC One platform is customizable, allowing USAA to choose the methodology and parameters to arrive at a valuation for a total loss vehicle.

43. USAA chose to use the parameter that reduces the price of comparable vehicles and chose the setting that systematically calculates the amount in which the price of each comparable vehicle is reduced.

44. USAA maintains a centralized automobile claims system and handles the claims process for all of its underwriting subsidiaries.

45.    Insurance customers of USAA report their vehicle property damage claims through a website[3] or by a phone number operated by USAA.  Customers can track their claim through the website.

46.    USAA owns the copyright to the website.

47.    Upon information and belief, by design, USAA receives and processes all vehicle damage and total loss claims through its centralized claims system, and USAA's employees process those claims on behalf of its subsidiaries using the CCC One Report platform.

48.    Upon information and belief, USAA directs or controls the inputs, parameters, and valuation methods used in CCC Reports, including the application of the condition adjustments relevant to this litigation.

49.    For example, Plaintiff's CCC One Report indicates "USAA has included a standard license plate transfer fee or replacement license plate fee in the valuation per its application of state requirements. If any other license plate fee is applicable, please contact USAA for potential reimbursement." (Ex. B, p. 14 of 20).

50.    Upon information and belief, USAA—not the individual issuing insurers—selected, procured, and implemented the CCC One valuation platform for use across the USAA insurance enterprise.

---

[3] https://www.usaa.com/support/insurance/claims/

51. Upon information and belief, CCC's valuation tools, including the CCC One Report, are configured and operated pursuant to uniform rules, parameters, and valuation methodologies established, directed, or approved by USAA and applied consistently across its affiliated insurers.

52. Accordingly, the challenged valuation methodology is the product of enterprise-wide practices implemented and controlled by USAA.

53. Upon information and belief, the data used to calculate the comparable vehicle deduction is sourced from a third-party by CCC itself. Neither the source of the data nor its parameters are available to the public or disclosed to USAA's total loss claimants.

54. The data is unverifiable by a total loss claimant and, upon information and belief, is not even maintained in USAA's claim files.

55. USAA's systematic reduction of the retail cost of comparable vehicles in adjusting total loss claims in the State of Alabama is uniform and a common business practice across all of the class members' total loss claims.

**D. Plaintiff's Total Loss Claim**

56. On April 13, 2025, Plaintiff's 2018 Chevrolet Suburban was damaged in an accident in Montgomery County, Alabama.

57.    At the time of the accident, the Plaintiff and the 2018 Chevrolet Suburban were insured under a USAA policy underwritten by Defendant Garrison (Policy # 038656551 7102).

58.    On or about April 13, 2025, Plaintiff reported the loss through Defendant USAA's centralized claims service.

59.    Thereafter, Defendant USAA determined Plaintiff's 2018 Chevrolet Suburban was a total loss and used its customized CCC One platform to calculate the pre-accident value of the vehicle.

60.    Subsequently, USAA presented Plaintiff with a CCC One Market Valuation Report representing that the ACV it was required to pay for the total loss was $21,357.91. (Ex. B, p. 1 of 20).

61.    Using the CCC One Report, USAA calculated the Base Value of the Plaintiff's vehicle at $20,601.00 before other adjustments for taxes and fees.

62.    USAA systematically calculated the Base Value of the vehicle by averaging the listed sale price of seven (7) comparable vehicles after deducting an arbitrary and artificial condition adjustment of $2,302.00 for each vehicle.

63.    The $2,302.00 deduction represents a 10.05% reduction in "the amount that it would cost at the time of loss to buy a comparable vehicle."

64. Plaintiff asserts the deduction breached her insurance contract because she was not paid "the amount that it would cost at the time of loss to buy a comparable vehicle" as required by her insurance policy.

65. Upon information and belief, USAA's application of the condition adjustment deduction to Plaintiff's vehicle is typical of all putative class members.

66. Upon information and belief, each putative class member is owed an estimated average of $2,000 on their total loss claims, and the average deduction applied by USAA is an estimated 10%.

**E. USAA's Payment of Plaintiff's Car Replacement Assistance ("CRA")**

67. Plaintiff's policy includes "Car Replacement Assistance," which provides that, in the event of a total loss, Defendants will pay an additional 20% of the vehicle's ACV.[4]

68. Specifically, the policy states that Defendants "will pay an additional 20% of the actual cash value of the vehicle at the time of a total loss."

69. Defendants stated that Plaintiff's vehicle had a Base Vehicle Value of $20,601.00. (Ex. B, p. 1 of 20).

70. Based on that amount, Defendants paid $4,271.58 as CRA, which equals 20% of the stated, but albeit improperly reduced ACV.

---

[4] Ex. A, p. 16 of 24, Limit of Liability, A(3).

71.    The stated ACV was not the true amount required to purchase a comparable vehicle, but was instead reduced through the arbitrary application of uniform "condition adjustments" to comparable vehicles identified in the CCC valuation.

72.    As alleged herein, Defendants' application of condition adjustments reduced the value of the comparable vehicles by $2,302, thereby artificially lowering the calculated ACV.

73.    Because the ACV was improperly reduced, the CRA payment— calculated as 20% of that reduced amount—was likewise underpaid.

74.    Had Defendants properly calculated ACV based on the true retail cost to purchase a comparable vehicle, Plaintiff would have received a higher ACV and, correspondingly, a higher 20% CRA payment.

75.    Defendants' failure to calculate ACV in accordance with the policy, therefore, resulted in a compounded breach, reducing both the base ACV payment and the additional 20% CRA benefit owed under the policy.

76.    This practice also adversely affected other class members who had CRA coverage in their insurance policies in the same manner, as this was a uniform business practice of Defendants.

**F.  Summary of Plaintiff's Claims**

77.    <u>Breach of Contract – Garrison</u>. Plaintiff asserts Garrison breached its contract with her by underpaying her total loss claim after reducing the amount of comparable vehicles by $2,302.

78.    Plaintiff asserts that Garrison breached its contract with her when she was paid an improperly reduced total loss claim amount, which resulted in a CRA payment—calculated as 20% of that reduced amount— that was likewise improperly reduced.

79.    <u>Direct Participation Liability - USAA</u>. Plaintiff asserts that USAA is also responsible for the same breaches because it directly participated in and controlled the total loss claim procedure alleged herein.  USAA selected the process under which the impermissible reduction was applied and directed and controlled the conduct that resulted in the damages to the Plaintiff and class members.

80.    <u>Veil Piercing/Alter Ego Liability - USAA</u>. In the alternative, Plaintiff asserts that Garrison was a mere instrumentality of USAA in paying the Plaintiff's total loss and CRA claims. Plaintiff asserts that, under the alleged facts in this case, recognizing that USAA's corporate form is separate from its underwriting subsidiaries, Garrison, CIC, and CIG, will result in injustice or inequitable consequences.

81.    <u>Principal/Agent Liability – USAA</u>. In the alternative, Plaintiff also asserts that when Garrison paid her total loss claim after it was improperly reduced

by USAA's application of the arbitrary "condition adjustment" deduction to comparable vehicles, Garrison was acting as the agent of USAA with apparent authority of USAA.

82.    Damages. Upon information and belief, USAA applies the same impermissible valuation methodology to all of the approximately 3,000 vehicle total loss claims USAA handles annually in the State of Alabama.

83.    Upon information and belief, USAA shorts Alabama total loss claimants an estimated $2,000 per claim per year, (an estimated 10% of each total loss claim) for the class period of six years before the filing of this Class Action Complaint.

84.    A subclass of class members insured by USAA's subsidiary Defendant Garrison, as well as non-defendant subsidiaries, CIC, and GIC are owed additional damages due to the CRA payment—calculated as 20% of the reduced ACV amount.

85.    Although the class members are likely to be owed different amounts for the impermissible comparable vehicle retail cost reduction, those amounts can be easily and precisely determined from the CCC One Reports maintained in USAA's business records. (*E.g.*, Ex. B, p. 12 of 20).

86.    Likewise, so can the resulting underpayment of a subclass of class members who had CRA coverage and were underpaid as a result.

87.     On behalf of herself and on behalf of the proposed class, Plaintiff does not contest USAA's representations of the original stated retail cost of comparable vehicles before the impermissible reductions.

88.      Plaintiff also does not contest the value assigned for options, mileage, equipment, or preexisting damages for her vehicle or the comparable vehicles stated in the CCC One Reports provided to her and the proposed class.

89.     Rather, the Plaintiff only contests USAA's blanket reduction of the retail cost of comparable vehicles on behalf of herself and the class.

90.     Therefore, none of the total loss vehicles have to be revalued.  The Plaintiff is only seeking on behalf of herself and others the return of the line-item impermissible deduction, as well as the resulting underpayment of the 20% CRA coverage.

91.     <u>Declaratory and/or Injunctive Relief</u>. Plaintiff challenges a uniform valuation practice implemented by Defendant USAA and seeks prospective declaratory and injunctive relief prohibiting its continued use for all Alabama residents insured by the USAA group of insurers.

92.     Plaintiff asserts that declaratory and/or injunctive relief is required to prevent USAA from causing its underwriting subsidiaries to breach USAA's uniform automobile insurance policies by paying vehicle total loss claims after

USAA reduces the price of comparable vehicles using a CCC One Report as described in this Complaint.

93.    Further, Plaintiff asserts that declaratory and/or injunctive relief is required to prevent USAA from violating Alabama law and public policy applicable to calculating vehicle total loss claims.

94.    Alabama's vehicle total loss statutory and insurance regulation framework requires insurers to use the listed retail price of comparable vehicles when determining whether damage to a vehicle results in a total loss determination, and when calculating and paying total loss claims.

95.    When designating a vehicle as a total loss, Ala. Code § 32-8-87(d)(1) requires insurers to begin with the "retail value" of comparable vehicles.

96.    Further, the adjustment of total loss claims in Alabama is subject to Ala. Admin. Code 482-1-125.08 (hereinafter the "Total Loss Regulation"), which mirrors USAA's insurance policy in that it requires payment of "actual cost, less any deductible provided in the policy, to purchase a comparable automobile by the same manufacturer, same model year, with similar body style and condition, similar options and mileage" when paying total loss claims.

97.    These Alabama laws represent Alabama public policy prohibiting the type of arbitrary and unsupported reduction of the cost of comparable vehicles, which USAA now applies to total loss claims in Alabama.[5]

98.    Because the same conduct governs the claims of all Class members—regardless of which affiliated insurer issued their policy—declaratory and injunctive relief must run against USAA to be effective and to prevent future harm to Alabama residents insured by the USAA group of insurers who may be required to make vehicle damage claims with USAA's underwriting subsidiaries in the future.

99.    Plaintiff requests that Defendants be required to refund the amount of the illegal reduction of the retail cost of comparable vehicles stated in the CCC One Reports provided to her and the class members for all insureds subjected to this practice by USAA or any of its affiliates operating in the State of Alabama.

100.    Plaintiff requests a declaratory judgment that the business practice of USAA and its subsidiary insurers is in breach of USAA's insurance contract, in violation of industry standards, and in violation of Alabama public policy.

---

[5] Plaintiff is not asserting, or seeking to assert, a private cause of action under Alabama's Total Loss Regulation or other statute, but rather asserts these statutes represent Alabama public policy and the need for declaratory and/or injunctive relief to prevent future harm to USAA customers in Alabama.

101.  Plaintiff requests that USAA and its subsidiary insurers be enjoined from the practice of reducing the price of comparable vehicles in adjusting vehicle total loss claims in the State of Alabama.

## CLASS ACTION ALLEGATIONS

102.  The causes of action asserted herein are brought as a class action under the Federal Rules of Civil Procedure, Rules 23(a)(1)-(4), Rule 23(b)(2), and Rule 23(b)(3) as more specifically set forth below.  The conduct of Defendants USAA and Garrison has been systemic and continuous and has affected a large number of USAA automobile policyholders in the State of Alabama.

103.  This action seeks to recover damages suffered by the Plaintiff, and the members of the proposed class (collectively "class members"), all insureds of USAA or its affiliates, including the Defendant Garrison, whose vehicle total loss claims were calculated and paid using a CCC One Report, where the retail cost of comparable vehicles was reduced to arrive at a pre-accident value.

104.  All proposed class members have fully complied with all pertinent policy provisions to receive payment under their uniform insurance policies with USAA or its affiliates, and USAA determined that coverage existed for the loss and determined the claim to be a total loss. No further performance is required by any proposed class members to secure all available benefits provided by their policies.

## Class Certification Definition

18

105. Plaintiff seeks certification of the following classes:

**Breach of Contract - All Alabama USAA Insureds who have Received Total Loss Payments Calculated by a CCC One Report**

All persons, businesses, and entities insured under automobile insurance policies issued in the State of Alabama by Garrison Property and Casualty Insurance Company, USAA Casualty Insurance Company, USAA General Indemnity Company, or any other USAA-affiliated insurer, who, within the applicable limitations period, received payment for a total loss claim where the valuation of the insured vehicle was based on a CCC One Market Valuation Report that applied a "condition adjustment" deduction to comparable vehicles.

**Breach of Contract- All Alabama USAA Car Replacement Assistance Insureds**

All persons, businesses, and entities insured under automobile insurance policies issued in the State of Alabama by Garrison Property and Casualty Insurance Company USAA Casualty Insurance Company, USAA General Indemnity Company, or any other USAA-affiliated insurer, who, within the applicable limitations period, received payment for a total loss claim that included Car Replacement Assistance calculated as 20% of an actual cash value determined using a CCC One valuation applying condition adjustments to comparable vehicles.

**Declaratory and Injunctive Relief - All Alabama USAA Insureds**

All persons, businesses, and entities insured under automobile insurance policies issued in the State of Alabama by Garrison Property and Casualty Insurance Company, USAA Casualty Insurance Company, USAA General Indemnity Company, or any other USAA-affiliated insurer, who are insured by a USAA policy that covers a total loss of their vehicles.

106. Excluded from the classes are (a) the assigned Judge, the Judge's staff and family, and employees of USAA, Garrison, CIC and CIG, or other USAA affiliate (b) claims where the insured submitted written evidence supporting a

different valuation and the amount of that different valuation submitted by the insured was paid by USAA, Garrison, CIC and CIG to settle the total loss, and (c) claims where the insured executed a settlement agreement for a value agreed on between the insured and the USAA group of insurance companies.

107.   Plaintiff reserves the right to amend the class definition as necessitated by subsequent discovery or evidence in this matter or as ordered or recommended by the Court.

## **Numerosity**

108.   Pursuant to Rule 23(a)(1), membership in the class is so numerous as to make it impractical to bring all class members before the Court. Upon information and belief, USAA calculates and adjusts an estimated three thousand (3,000) vehicle total loss claims of its insureds annually on behalf of its subsidiary insurers in the State of Alabama. Therefore, the proposed class consists of 100 or more members, making joinder of claims impractical. The exact number of class members is unknown, but can easily be determined from the records maintained by the Defendants, which will allow the members of the proposed class, as well as those who are then excluded, to be easily identified.

## **Typicality**

109.   Plaintiff, Celeste Chambliss, is typical of a member of the proposed class pursuant to Rule 23(a)(3). Plaintiff purchased a USAA automobile policy, paid

premiums, and made a claim for loss when her insured automobile was damaged. She filed a claim with USAA and made her vehicle available for a valuation and payment of the loss. USAA then elected to declare the vehicle a total loss, but underpaid the claim based upon a valuation by USAA using the CCC One Market Valuation Report, which reduced the retail cost of comparable vehicles in breach of USAA's contractual obligations, in violation of industry standards, and in violation of Alabama public policy and Alabama law. Plaintiff's interest in obtaining compensation for her loss (the underpayment of her claim compared to the amount she would have received, but for the illegal reduction of the retail cost of comparable vehicles) is identical to those of other unnamed members of the class.

110.   Pursuant to Rule 23(b)(2), Plaintiff, Celeste Chambliss, is typical of a member of the proposed class for declaratory and injunctive relief as the alleged impermissible action has taken effect or is threatened only as to one or a few members of the proposed class.

### Commonality

111.   Pursuant to Rule 23(a)(2), there are questions of law and fact common to all members of the proposed class which predominate over any individual issues. Common questions of law and fact include, but are not limited to:

a.    Whether Defendants' CCC One Report-based valuation methodology violates the policy definition of actual cash value;

b.      Whether the application of uniform condition adjustments improperly reduces the value of comparable vehicles;

c.      Whether Defendants' methodology results in systematic underpayment of total loss claims;

d.      Whether Car Replacement Assistance payments were improperly reduced as a result of the undervalued actual cash value; and

e.      Whether declaratory and injunctive relief is required to prohibit Defendants' ongoing conduct.

## Adequacy Of Representation

112.   Plaintiff has no interest adverse to the interests of other members of the proposed class and will fairly and adequately protect the interests of the class pursuant to Rule 23(a)(4).

113.   Plaintiff has retained the undersigned counsel, who have been appointed as class counsel in other class actions by other federal district courts, and are experienced and competent in the prosecution of class actions and complex litigation, and have the experience necessary to prosecute her case and adequate resources to prosecute her claim.

## Superiority

114.   Pursuant to Rule 23(b)(3), the questions of law and fact common to the proposed class members predominate over any questions affecting only individual

members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Absent a class action, USAA's practice of calculating vehicle total loss claims in Alabama after calculating the amount by reducing the retail cost of comparable vehicles will continue, and the class members and future USAA total loss claimants will continue to suffer damage, and USAA's conduct will proceed without an effective remedy.

115.   Individual class members of the proposed class have little interest or ability to prosecute an individual action due to the relatively small damages suffered by each member of the proposed class, and not knowing that USAA's practices in paying their total loss claims violated their policies and  regulations, and as such, that they were underpaid for their total loss claims.

116.   Pursuant to Rule 23(b)(2), Defendants have acted on grounds generally applicable to the classes. Final injunctive and declaratory relief is appropriate to the Classes as a whole.

117.   This action will allow for the orderly, fair, and expeditious administration of class claims, economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.  A collective adjudication will allow sufficient proof and expertise to be assembled to fairly value and prove the losses at issue.

118.   Pursuant to Rule 23(b)(3), this action will present no difficulties that would impede its management by the Court as a class action, and a class action is the best available means by which Plaintiff and the members of the proposed classes can seek redress for the harm caused to them by USAA and its subsidiaries.

119.   An exact list of members of the proposed class can be generated from the business records of USAA.  USAA's business records will show the amounts its insureds were underpaid for their total loss claims, including the line-item reduction of the retail cost of comparable vehicles.

120.   Accordingly, both liability and damages can be presented and proven on a class-wide basis with common evidence and then allow a recovery to be efficiently distributed to the members of the class.

## FIRST CAUSE OF ACTION
### BREACH OF CONTRACT
**(Garrison Property and Casualty Insurance Company)**

121.   Plaintiff incorporates all previous allegations.

122.   Plaintiff entered into a contract for automobile insurance with Garrison. She paid all required consideration in the form of premiums for the coverage afforded by the insuring agreement.  The same is true for all proposed class members.

123.   As a subsidiary of USAA, Garrison's uniform policy, at all relevant times herein, provided insurance coverage to Plaintiff for the total loss of her motor

24

vehicle and provided for the payment of "the amount that it would cost at the time of loss to buy a comparable vehicle."

124.   The uniform policy also includes "Car Replacement Assistance," which provides that, in the event of a total loss, Defendants will pay an additional 20% of the vehicle's actual cash value.

125.   The insurance contract also contained an implied covenant of good faith and fair dealing requiring that neither party to the agreement would do anything to injure the right of the other to receive the benefits of the agreement, and each party agreed to act in good faith in fulfilling the contract.

126.   Further, USAA was required to follow Alabama law for the adjustment of a total loss claim of the Plaintiff's vehicle.  Under Alabama law, the actual cash value of vehicles is determined by using the retail cost of comparable vehicles.

127.   As described above, Plaintiff suffered a total loss of her 2018 Chevrolet Suburban.

128.   USAA, Garrison's parent company, calculated the total loss claim by reducing the cost of comparable vehicles by $2,302.00.

129.   Garrison breached the insurance contract when it failed to pay "the amount that it would cost at the time of loss to buy a comparable vehicle."

130. Garrison also breached the insurance contract when it paid "Car Replacement Assistance," which provides that, in the event of a total loss, Defendants will pay an additional 20% of the vehicle's actual cash value.

131. As the Car Replacement Assistance payment—calculated as 20% of that reduced amount—was underpaid and in direct breach of the insurance contract between Garrison and the Plaintiff.

132. Garrison and USAA have engaged in the same conduct as to other similarly situated class members.

133. As the direct and proximate result of the foregoing material breach by Garrison, the Plaintiff has been damaged by the impermissible comparable vehicle retail cost reduction in the amount of $2,302.00.

134. As a direct and proximate result of the foregoing material breach by Garrison as a subsidiary of USAA, each proposed class member has also been damaged by the amount of the reduction of the retail cost of comparable vehicles as indicated on each of their CCC One Reports.

**SECOND CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(United Services Automobile Association ("USAA")**

135. Plaintiff incorporates all previous allegations.

136. Plaintiff entered into a contract for automobile insurance with one of USAA's underwriting subsidiaries in the State of Alabama. She paid all required

consideration in the form of premiums for the coverage afforded by the insuring agreement. The same is true for all proposed class members.

137. The uniform USAA policy, at all relevant times herein, provided insurance coverage to Plaintiff for the total loss of her motor vehicle and provided for the payment of "the amount that it would cost at the time of loss to buy a comparable vehicle." The same is true for all proposed class members.

138. Plaintiff's policy also includes an additional "Car Replacement Assistance," which provides that, in the event of a total loss, Defendants will pay an additional 20% of the vehicle's actual cash value. The same is true for all proposed Car Replacement subclass members.

139. The insurance contract also contained an implied covenant of good faith and fair dealing requiring that neither party to the agreement would do anything to injure the right of the other to receive the benefits of the agreement, and each party agreed to act in good faith in fulfilling the contract. The same is true for all proposed class members.

140. USAA received and controlled the adjustment of the Plaintiff's claim and was required to follow the terms of the policies issued to the class members as well as Alabama law for the adjustment of a total loss claim of the Plaintiff's vehicle.

141. As described above, USAA breached the insurance contract by calculating the Plaintiff's total loss claim using a CCC One Report, which reduced

27

the price of comparable vehicles, thereby reducing the total loss claim payment below the promised "amount that it would cost at the time of loss to buy a comparable vehicle."

142. USAA has engaged in the same conduct as other similarly situated class members.

143. At all relevant times herein, the Defendant USAA directly participated in the scheme to underpay motor vehicle total loss claims by reducing the list prices of comparable vehicles to calculate ACV and are thereby liable to Plaintiff and class members by virtue of its own conduct in violation of USAA's form insurance policies.

144. At all relevant times herein, the affiliate underwriters of USAA, operating in the State of Alabama are the mere instrumentalities of the Defendant USAA and the Court should pierce the corporate veil of these affiliates to hold the Defendant USAA liable for the contract violations and actions of its affiliate insurers.

145. At all relevant times herein, the affiliate insurers of USAA operating in the State of Alabama were agents of USAA, as the Principal company, and therefore, the Defendant USAA should be liable for the conduct of its agents and affiliates in the implementation of this scheme to reduce ACV in the payment of total loss claims based on Agent/Principal theories of liability.

28

146.  As the direct and proximate result of the foregoing material breach by USAA and/or its agents and affiliates, the Plaintiff has been damaged by the impermissible comparable vehicle retail cost reduction in the amount of $2,302.00.

147.  As a direct and proximate result of the foregoing material breach by USAA and/or its agents and affiliates, each proposed class member has also been damaged by the amount of the reduction of the retail cost of comparable vehicles as indicated on each of their CCC One Reports.

## THIRD CAUSE OF ACTION
### DECLARATORY AND INJUNCTIVE RELIEF
### (USAA and Garrison)

148.  Plaintiff incorporates all previous allegations.

149.  An actual controversy exists regarding Defendants' obligations under the policy.

150.  Plaintiff seeks a declaration that ACV must be determined based on the actual retail cost to purchase comparable vehicles.

151.  Plaintiff further seeks an injunction prohibiting Defendants from reducing comparable vehicle prices through uniform condition adjustments.

152.  Such relief is necessary to prevent ongoing breaches of USAA's insurance contracts with Alabama residents and violations of Alabama law and public policy.

29

153.   Final declaratory relief or corresponding injunctive relief is appropriate with respect to the declaratory or injunctive relief for the class as a whole.

154.   A single declaratory or injunctive relief judgment would provide relief to each member of the declaratory or injunctive relief class.

**WHEREFORE**, Plaintiff and the proposed class members respectfully pray that the Court:

1.   Enter an order certifying this action as a class action, including certifying the cause of action for breach of contract under the appropriate subsection of Fed.R.Civ.P.23(a)(1)-(4),

2.   Enter an order certifying this action as a class action, including certifying the cause of action for declaratory and injunctive relief under Fed.R.Civ.P.23(b)(2);

3.   Enter an order certifying this action as a class action, including certifying each cause of action under Fed.R.Civ.P.23(b)(3);

4.   Enter an order appointing Plaintiff as class representative and appointing the undersigned counsel to represent the class;

5.   Enter judgment in favor of Plaintiff and the class members against United Services Automobile Association and Garrison Property and Casualty Insurance Company for an amount to be determined at trial;

30

6.    Enter an award of attorney fees and costs, as provided by law and/or as would be reasonable from a recovery of monies recovered for or benefits to the Plaintiff and class;

7.    Tax the cost of this action against the Defendants;

8.    Grant such other and further relief as the Court may deem just and proper; and

9.    Grant the Plaintiff and class members a jury trial.

*/s/Jay Aughtman*

Joseph "Jay" H. Aughtman (ASB-8081-A43J)
*Attorney for the Plaintiff and Class*

OF COUNSEL:
**Aughtman Law Firm, LLC**
1772 Platt Place
Montgomery, AL 36117
T: (334) 215-9873
F: (334) 213-5663
jay@aughtmanlaw.com

*/s/Aaron C. Hemmings*

Aaron C. Hemmings (*pro hac vice* to be filed)
Kelly A. Stevens (*pro hac vice* to be filed)
*Attorneys for the Plaintiff and Class*

OF COUNSEL:
**Hemmings & Stevens, P.L.L.C.**
5540 McNeely Drive, Suite 202
Raleigh, NC 27612
T: (919) 277-0161
F: (919) 277-0162
ahemmings@hemmingsandstevens.com
kstevens@hemmingsandstevens.com